# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Justin Browning, et al.,                                     Case No. 3:15CV2687

               Plaintiffs

        v.                                         **ORDER**

University of Findlay, et al.,

               Defendants

This is an insurance dispute.

In 2014, the University of Findlay expelled two students, plaintiffs Justin Browning and Alphonso Baity, after concluding that they sexually assaulted M.K., an adult female student. Browning and Baity sued the University, contending that it discriminated against them on the basis of race and gender during the investigation into M.K.'s allegations and in deciding to expel them.

Claiming that their sexual encounter with M.K. was consensual, plaintiffs also sued M.K. for defamation. M.K. responded with a counterclaim alleging that Browning and Baity had sex with her even though, due to her severe intoxication, she was incapable of consenting.

Thereafter, State Farm Fire and Casualty Company, which had issued a homeowner's policy to Baity's father that defined Baity as an insured, intervened in the litigation. (Doc. 27). It sought a declaratory judgment that it had no duty to defend or indemnify Baity against M.K.'s counterclaim. (Doc. 31).

Pending is State Farm's motion for summary judgment. (Doc. 68). For the following reasons, I grant the motion.[1]

## Background

### A. Allegations in the Counterclaim

M.K. alleges that she attended a party at the "Mascot House" on September 20, 2014. (Doc. 7 at 18, ¶¶4–5). There M.K. both "voluntarily and . . . at the insistence of others, consumed alcohol to the point where she was grossly intoxicated." (*Id.*, ¶4).

Someone then drove M.K. to Browning and Baity's off-campus residence. (Doc. 69–1 at 57). According to M.K., Browning and Baity "should have known, but failed to recognize or acknowledge, that [she] was not able to consent to any sexual activity." (Doc. 7 at 18, ¶5). Despite "numerous signs that [M.K.] was incapable of consenting to sexual activity," Browning and Baity had oral and vaginal sex with M.K. despite her inability to consent. (*Id.*, ¶6).

M.K. also alleges that Browning and Baity "photographed" her "during and after the sexual activity," either without her knowledge or over her objection. (*Id.*, ¶7). Browning and Baity then published those photos, "which were graphic, obscene, [and] humiliating[.]" (*Id.*).

Based on these allegations, M.K.'s counterclaim asserts claims for negligence, breach of contract, and invasion of privacy.

### B. M.K.'s Testimony

At her deposition, M.K. testified that she did not "sustain physical injury" – "no bruises, no – anything like that" – from the sexual contact with Browning and Baity. (Doc. 69–1 at 83).

---

[1] Jurisdiction is proper because: 1) I have federal-question jurisdiction over Browning and Baity's federal claims against the University and supplemental jurisdiction over their state-law claims; and 2) I previously granted State Farm's motion to intervene as a matter of right. *See Vill. of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007).

She did testify, however, that she "got a UTI" – a urinary tract infection – "as a result of" the alleged sexual assault. (Doc. 69–1 at 83).

On September 30, 2014 – ten days after the alleged assault – M.K. went to a campus medical clinic, where she complained to a nurse that she had a UTI. (*Id.* at 89–90; Doc. 81–3 at 14). Asked at her deposition how she knew she had a UTI, M.K. testified, "I'm very sensitive . . . And it happens to me practically every time after I have sex." (Doc. 69–1 at 83). M.K. explained that her "urine was cloudy" and "[i]t hurt to pee," which she recognized as symptoms of a UTI. (*Id.* at 90). M.K. did not know how long "those symptoms [had] been going on[.]" (*Id.*).

M.K. could not remember, however, if any medical professional determined that she had a UTI at that time or that any such UTI was a result of the sexual contact with Baity or Browning. (*Id.* at 83, 89).

M.K. also testified that she noticed "a bunch of red dots down [her] throat" after having sexual contact with Baity and Browning. (*Id.* at 66). Julia Yingling, a nurse who saw M.K. during her September 30 visit to the campus clinic, testified that she noticed "petechiae on the roof of [M.K.'s] mouth," which Yingling described as "broken tiny little blood vessels." (Doc. 81–3 at 14, 19).

M.K. could not recall if a "medical professional . . . told [her] that these spots were a result of having sex with Baity or Browning[.]" (Doc. 69–1 at 90; *see also id.* at 87).

### C. State Farm's Policy

State Farm issued a homeowner's policy to Baity's father, under which Baity is an insured, that covered claims for "bodily injury or property damage . . . caused by an occurrence." (Doc. 68–1 at 31).

3

Under the policy, an "occurrence" means "an accident, including exposure to conditions, which results in (a) bodily injury; or (b) property damage." (*Id.* at 18).

The policy defines "bodily injury" to mean "physical injury, sickness or disease to a person" and to exclude, *inter alia*, "[e]motional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (*Id.* at 17).

No coverage is available, however, for a claim of "bodily injury" that is "either expected or intended by the insured" or "the result of willful and malicious" acts by the insured. (*Id.* at 32).

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment where: 1) the movant shows there is no dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); and 2) the opposing party cannot prove an element of its claim. *Id.* 322.

In opposing the motion, the nonmoving party must, under Rule 56, submit admissible evidence of "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

I must accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

State Farm argues that it has no duty to defend or indemnify Baity against M.K.'s claims. This is so, the insurer maintains, because: 1) "[t]he counterclaims do not allege that M.K. suffered 'bodily injury'"; 2) M.K. has not alleged an "occurrence" because the allegations concern intentional conduct and harm – Baity's sexual assault of M.K. – rather than an accident;

4

and 3) the policy exclusions for "expected or intended acts" and "willful and malicious acts" preclude coverage. (Doc. 68 at 10).

Baity disputes each of these points.

He first argues that "[t]he evidence revealed during discovery demonstrates that M.K. claims that she did, in fact, suffer a 'bodily injury'" in the form of a UTI and the red spots in her throat. (Doc. 80 at 6). Baity maintains that the alleged assault qualifies as an "occurrence" because he "had no intention of causing M.K. any harm whatsoever." (*Id.*). Finally, Baity contends that neither exclusion applies because any harm he caused M.K. was accidental, not intentional or willful and malicious. (*Id.*).

### A. Insurer's Duty to Defend

"An insurer has an absolute duty to defend its insured when a complaint states a claim that arguably falls within the scope of coverage that the insured's policy provides." *Ward v. United Foundries, Inc.*, 129 Ohio St. 3d 292, 295 (2011).

This duty to defend is broader than the insurer's duty to indemnify.

"When the allegations in the complaint or any allegations arising after the complaint state a claim that is potentially within the policy coverage, the insurer must accept the defense of the claim, regardless of the ultimate outcome or the insurer's ultimate liability." *Chiquita Brands Int'l, Inc. v. Nat'l Union Ins. Co.*, 988 N.E.2d 897, 900 (Ohio App. 2013).

### B. M.K. Did Not Allege a "Bodily Injury" Caused by an "Occurrence"[2]

Baity contends that, "based on M.K.'s allegations" that she developed a UTI and "red spots" after the assault, I should "determine that there is a genuine issue of material fact regarding whether a 'bodily injury' exists in this case." (Doc. 80 at 12).

---

[2] I assume without deciding that the alleged sexual assault qualifies as an occurrence.

5

State Farm responds that no evidence establishes that M.K. in fact developed a UTI. (Doc. 85 at 19–22). It also argues that there is no expert proof of a causal connection between her sexual contact with *Baity* (rather than Browning) and her alleged post-sex UTI and petechiae. (*Id.* at 22–26).

Having considered these arguments in light of Ohio law, which controls this dispute, I agree that there is no genuine issue of material fact as to whether Baity caused any "bodily injury" to M.K. Accordingly, State Farm has no duty to defend or indemnify Baity against M.K.'s claims.

### 1. UTI as "Bodily Injury"

"The Ohio Supreme Court has held that 'bodily injury' usually indicates an injury brought on by external violence." *David v. Nationwide Mut. Ins. Co.*, 106 Ohio App. 3d 298, 301 (Ohio App. 1995).

Both sides agree that a UTI would be a form of "bodily injury."

Here, though, there simply is no medical evidence in the record – whether in the form of a diagnosis, treatment records, or laboratory testing – establishing that M.K. actually developed a UTI in the days after the alleged sexual assault.

Indeed, the only evidence Baity cites as showing a "bodily injury" is a handwritten note on the back of one page of M.K.'s medical records. It states: "10-8-14. All Labs have returned: (1) UA = E. Coli – Rx macrobid 100mg BIDx7days." (Doc. 80–1 at 4).

This sparse notation would not support a finding by a preponderance of the evidence that M.K. had a UTI.

For one thing, the handwritten statement is hearsay: it is an out-of-court statement that Baity offers for its truth, *i.e.*, that a urinalysis showed that M.K. had E. coli in her urine. *See*

*Field v. Trigg Cnty. Hosp.*, 386 F.3d 729, 735–36 (6th Cir. 2004) (opinions and diagnoses from medical providers are not admissible under Fed. R. Evid. 803(4)). As, if not more, importantly, the note does not confirm that M.K. had a UTI.

Moreover, while Nurse Yingling testified that M.K. complained of having a UTI, Yingling herself did not examine M.K., diagnose her with a UTI, or testify that M.K. had a UTI. (Doc. 81–3 at 14). Likewise, M.K. never testified that a doctor or other medical professional, upon examination, diagnosed M.K. as having a UTI. Rather, she testified only that she believed she had a UTI, given the symptoms she was experiencing and attributing to sexual activity.

But even assuming that that evidence established that M.K. did have a UTI, there is no expert testimony to prove that Baity's sexual contact with M.K. caused the UTI.

Ohio law requires expert evidence "on complex issues outside the area of common knowledge, such as an injury's cause and effect." *Laderer v. St. Rita's Med. Ctr.*, 122 Ohio App. 3d 587, 597 (Ohio App. 1997). "Except to the extent that it is open to ordinary observation by persons of common experience, opinion testimony relating to the physical condition of a person is limited to the testimony of experts, in most but not all cases, that of physicians." 43 Ohio Jur. 3d Evidence & Witnesses § 637.

The parties have not cited, and I have not found, an Ohio case holding that expert testimony is needed to prove that sexual contact can cause a UTI.

However, the case law recognizes that: 1) many things can cause a UTI; and 2) the cause-and-effect relationship between a set of causal circumstances and the resulting presence of a UTI is often the subject of expert testimony. *E.g.*, *State v. Fuller*, 2002-Ohio-4110, ¶43 (Ohio App. 2002) (where a forensic pathologist testified that a woman's UTI "in the days or weeks before she die[d]" was not "necessarily indicative of sexual contact because there are 'lots of different

causes of urinary tract infection'"); *Jones v. Kaiser Found. Hosps.*, 1992 WL 161147, *1 (Ohio App. 1992) (where experts offered conflicting testimony on the question whether the plaintiff had a UTI during her pregnancy); *see also Lynch v. Dean*, 1985 WL 56683, *15 (M.D. Tenn. 1985) (where an expert testified that "a change in sexual activity," as well as "the practice of females holding their urine," can cause UTIs), *rev'd on unrelated grounds*, 817 F.2d 380 (6th Cir. 1987).

Given these considerations – the many possible causes of a UTI and the frequency with which experts have opined on the issue – I conclude that expert testimony is needed to prove that the sexual contact between Baity and M.K. caused M.K. to develop a UTI – and thus, a "bodily injury" within the policy's coverage.

The ten-day delay between the alleged assault and M.K.'s visit to the campus clinic – where she reported having a UTI – as well as M.K.'s own "sensitivity" to developing UTIs underscore the need for expert causation evidence in this case. Even assuming the jury would know from common experience that sexual contact between M.K. and Baity could have caused a UTI, the jury would be ill-equipped to understand how, if at all, anything that occurred in the intervening days, or M.K.'s own sensitivity to developing UTIs, affected that basic cause-and-effect relationship.

Because there is no expert evidence in the record, there is no basis to find that M.K. sustained a "bodily injury" in the form of a UTI as a result of the alleged sexual assault.

### 2. Petechiae as "Bodily Injury"

The same conclusion obtains as to the claim that the sexual contact between Baity and M.K. caused M.K. to develop petechiae on the roof of her mouth.

8

As State Farm's motion establishes (Doc. 85 at 25), there is no evidence linking the petechiae to Baity's alleged assault. Aside from the ten-day delay between whatever happened sexually between him and M.K., no expert has opined that any sexual contact with M.K. caused, to a reasonable degree of medical certainty, M.K.'s petechiae. That M.K. thinks that it did is not evidence; it is speculation.

Accordingly, the evidence would not permit a reasonable jury to find that the alleged assault caused a "bodily injury" in the form of the petechiae in M.K.'s mouth.[3]

## Conclusion

It is, therefore,

ORDERED THAT State Farm's motion for summary judgment (Doc. 68) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[3] In light of this disposition, I no longer believe it appropriate to certify to the Ohio Supreme Court, as I had expected to do, the question whether the inferred-intent doctrine applies to adult-on-adult sexual assault, such that State Farm's policy would preclude coverage under the exclusion for claims of bodily injury that was "expected or intended" by the insured. *See Allstate Ins. Co. v. Campbell*, 128 Ohio St. 3d 186, 191 (2010) (discussing the doctrine and recognizing its applicability to sexual assaults of minors).